We'll hear the next case, Elghourab v. Vista. Yes, good morning. Thank you, Your Honor. My name is Christopher Secord. I'm with the law firm Gordon-Reeves, Philly, Minnesota County, LLP. We represent Appellant Vista JFK, LLC and may please the Court. The district court added to this matter by concluding that the appellee, Muhammad Elghourab, the former executive chef at an appellant's restaurant located in the JFK Radisson Hotel, was not exempt from the overtime provisions of the FLSA and New York labor law. The district court reached its conclusion by failing to admit and consider key documentary evidence, choosing not to credit the testimony of multiple defenseless witnesses and by relying exclusively on plaintiff's inconsistent and often illogical testimony. Now, you're asking us to overturn the district court's credibility findings? I'm asking, well, the review is a de novo review as far as the legal application. As far as the credibility findings, yes. You just said that the district court was wrong in finding certain testimony not credible. How do we have authority to second-guess the credibility findings? Well, because the credibility findings were an abuse of discretion. It was also not consistent with the documentary evidence that was not admitted during the trial. In order to reach this conclusion, in order to find plaintiff credible in this case, you really have to ignore everything else that was said during the course of this trial. It's a bit odd always to make evidence exclusion arguments in cases where there's a bench trial because, in fact, all the evidence is before the district judge and he's deciding probativeness as well as admissions. It's kind of odd because, in the end, it comes down to whether we defer to the district judge in what the district judge finds to be the fact in a case like this. Not in the last one, but in this one. I definitely agree with you that it is a bit odd. Yes. But there is an appellate procedure for a reason, and the reason is to review whether or not what happened in this case was proper. If you look at the evidence that was excluded, if you look at the performance evaluation, which plaintiff signed, it was not admitted for reasons that I still cannot completely comprehend. This was authenticated as a business record. Plaintiff admitted to signing. Plaintiff even started testifying about it without even being asked, and still the document was not admitted. It lists his managerial duties. I understand that one of VISTA's witnesses testified that the evaluation was not maintained in the regular course of business. Is that true? No. Which witness testified to that? No. The district court's rationale for not considering it was that it was one evaluation and that there were not evaluations for other years. This was an evaluation in 2015. Unfortunately, the general manager who prepared it is deceased. This would be a much cleaner case if he was still around, but unfortunately he is not. This was clearly a business record, and it clearly was given to the plaintiff, and his signature is on it. He admitted to signing it. It's a pretty detailed evaluation. It ends with, this is the place where you need to improve. More documentation regarding team member performance. More attention to food quality and production. More involvement with guest experience. It is a document that clearly evidences this individual's managerial functions. It was disregarded. So was the job description, which also lists the managerial functions. There was an email from, again, Mr. Mehaj, who unfortunately is not with us. An admonishing plaintiff for his failure to essentially perform his managerial roles, for failing to coordinate the rollout of what is called the galley, for his lack of creativity, his lack of vision. By the way, I'm sorry. I did find the testimony of Baroness at the appendix page 919, and he says he only got one review in five years, and he admits that it was not maintained in the regular course of business. Isn't that a basis for excluding the document? Well, it's a she, but 919. No, she did testify that it was maintained in the regular course, but I don't. This was not something that occurred year after year, like the payroll records we looked at every week. They're maintained right in the regular course of this business, right? All right. It's unclear. She says yes. The question begins with not. I'm not sure what – it's a little ambiguous and unclear question. Anyway, go ahead. No, and in an effort to establish the foundation, I asked her, was this maintained in the regular course of business? Was this – was it prepared by somebody? All the foundational questions, and she responded yes. I guess you're referring to a cross-examination question, and as you mentioned, it was a little ambiguous, but that wasn't even the rationale for district court excluding. All right. You have one minute. Just one minute. Okay. Putting aside the evidentiaries, obviously, in order to determine whether or not somebody is qualified for the executive exemption, they have to be compensated on a salary basis. Their primary duty is management, regularly direct the work of two or more employees, and they have the authority to hire or fire. All of these factors were met if you look at the testimony, including the testimony of Plaintiff himself. With respect to – the salary is not in question. With respect to the primary duty of management, the district court found that the plaintiff's primary duty was to work alongside his union colleagues performing non-exemptive tests, and that was one of the weirdest things about this case. I mean, this is a union shop, and the district court concluded that a non-union employee was performing union tests for five years, and there's no union in this country that would allow that to happen. It's just – But isn't it interesting that there was no objection by union members? Doesn't that suggest that in fact he was doing that job? I mean, they had a right to do that, to object. Wait, no, it's just the exact opposite. The fact that they haven't objected means that he wasn't doing those union – yeah, are you saying he was doing the managerial job? The fact that they didn't – There was one time when he was – there was a grievance by the union because Mr. Elgarov was performing union work, and it had to do with the – again, with the galley. And yes, there was a grievance, and people were – union employees were paid as a result of that grievance. Now, if he was performing – Let's hear from the other side, and you have some time for rebuttal. Okay, good morning, Your Honors. My name is Justin Riley. I represent Mohamed Elgarab, who is the appellee. I have represented Mr. Elgarab from the inception of this case, through depositions, through summary judge and practice, and I represented him at trial. I was actually the attorney who voir dired Sam Lebrunas relating to the performance evaluation, and I thought it was clear that the written evaluation was only given to him for one year of his employment. It was issued by someone who is – he's deceased. Mr. Elgarab was employed there for four years prior to this evaluation, and one year after the evaluation, and he was never given another written review. And nobody in the kitchen were given written reviews. So Ms. Barones did testify that this record is not something that was kept in the ordinary course of business, and it was properly excluded by Judge Ross, in my opinion. Regarding the email that my adversary was referring to, the drafter of the email is deceased. Again, he was a general manager there during the year 2015, and so there was no opportunity to cross-examine him. And this email was actually not admitted in Judge Ross' summary judgment decision. She decided not to admit this email because of those reasons, that it was hearsay. But at trial, the VISTA-JFK tried to admit this email again, and that was denied. Also – As Judge Calabrese suggests, she had to review all these things anyway, right, to decide whether – Well, yes. And all of these documents were submitted in support of the summary judgment motion, which was denied. The actual job description, when I took that position, I asked so many questions regarding this job description, because there's an umbrella company that owns many hotels in Canada and in the United States, and the VISTA-JFK hotel, the JFK Radisson, is, I believe, the only union hotel, or there might have been one more union hotel down in Orlando, Florida. And this job description, he didn't know who drafted it. It was not in the plaintiff's personnel file. And the plaintiff testified that it was never given to him, and it was never used as a basis to tell him what his job duties actually were. And none of these witnesses actually tried to figure out what he did on a day-to-day basis to decide whether or not he was exempt. And the job description was a generic document, and it was admitted through the proceedings. And it was also admitted that a lot of this job description was not applicable to this particular position at this particular hotel. How do you respond to the point that if, indeed, he had been doing union work, union members would have objected? Well, I took the testimony, pre-trial and trial testimony, of two cooks that worked with him on a daily basis, and these cooks testified that he was doing union work day in and day out. You see, the kitchen was very segmented, and the guy that came in at 8 o'clock in the morning, he would only work on doing the lunch for the employees, and there was only one breakfast cook who didn't testify at a deposition or a trial who Ms. Delgrad would work with, and he would do the buffet with the breakfast cook. Yeah, but why, counsel, why if he was doing union work and wasn't a union member, didn't union members object? Because I think that he was helping them do their job, and it made their job a lot easier. So why object? He was the filling guy. He was the guy who was designated as a non-union employee, that they could make work between 80 and 100 hours a week, and everyone else only has to work seven hours, and as soon as their shift is over, they leave, and they get paid time and a half after working seven hours in a day, and Ms. Delgrad admittedly got paid no overtime at all. So you're saying that they were more interested in having him help than the fact that he wasn't a member of the union, and while you expect them to object to that, they were more interested in having him help. So it is a factor against you, but then again, it's a factor that the district court considered and decided in your favor. Is that your argument? That is the argument, and Judge Ross's findings of fact are to be reviewed for clear error, and her credibility determinations are also to be reviewed for clear error, and prior to trial, the five witnesses that I put on the stand for representing the defendants, I took their testimony, and I prepared my cross-examination outlines based on all the omissions that I felt helped the plaintiff's case, and when I put them on the stand, they repeatedly either changed their testimony or conveniently forgot what they testified to, and the two people that worked with him on a day-to-day basis, I took their deposition testimony less than two months before trial, and all of a sudden, their testimony is different, and I had to repeatedly impeach these witnesses, and Judge Ross saw it, everyone in the courtroom saw it, even the stenographers that were taking down the testimony. Every two hours, a new stenographer came in, and everyone was talking about it. It was apparent in the courtroom that there was a real credibility issue, and in her findings of fact, she determined that the plaintiff's testimony was the most credible because he was honest, he had nothing to hide, she also saw that he was uneducated, he spoke broken English, and he was a person with limited capabilities who just worked very, very hard and worked 80 to 100 hours a week, knowing throughout this whole process through depositions or trial, the defendant never made any attempt at all to attack the hours that he said that he worked, and defendants' witnesses actually helped the amount of hours that he worked. The morning guy came in at 8 o'clock, and he said Mr. Elgrab was usually there. The evening cook left at 11 or 11.30 p.m. and said that Mr. Elgrab was usually there at that time, too. Selma Barone has testified that he usually showed up at 6 a.m. in the morning. So in crediting his hours, Judge Ross could have given him 17.5 hours a day. Instead, she gave him at most 14 hours a day. So she was very conservative in her approximation, and because there's no time records, the court is allowed to do an approximation. Now when you look at her findings of fact, and she should be given deference because she was the judge that sat there and listened to all this. When you apply the executive exemption case law to these findings of fact, it's clear that defendant did not meet its heavy burden and prove that the exemption was applicable. She went through all the DOL factors and analyzed each factor and found that just about all the factors were in favor of the plaintiff or there was a tie. So the law is to be viewed de novo, but she correctly applied the law like every other district judge in the southern eastern district do when it comes to the executive exemption. With regard to damages, the damages calculation is to be viewed for clear error, and as I said, the defendant never tried to rebut the hours that the plaintiff claims to have worked, and Judge Ross's determinations were conservative. The damages chart was merely translated from the evidence at trial. It was like a mathematical formula that we do in all of our cases. We submit a damages chart pre-trial and post-trial based on the actual evidence. It's routinely done this way at bench trials in the eastern and southern district, and we've cited case law in our brief to support that. Regarding liquidated damages, I mean double damages is the norm. There's enough case law to support that. Defendant has a burden to show that they're acting in good faith and with objectively reasonable grounds in believing that the FLSA was not violated. When I took the deposition testimony, and also this testimony was adduced at trial, that they just gave him a job description. No one went to see what he did on a day-to-day basis, whether or not that fell within the FLSA or New York Labor Law Executive Exemption. No one knew really what he did each day except for the two cooks, and the two cooks really worked by themselves most of the time. Their testimony was limited in that regard too. I think that liquidated damages, the lower court's opinion should be affirmed, and the liquidated damages portion that she awarded should be kept intact because it's clear that there was no good faith here. One of the witnesses testified that the reason why he was exempt was because it was industry custom. San LeBaron is the HR manager. She testified that she thought that because you're paid on a salary, that means you're exempt. She never did any research on the FLSA or the New York Labor Law to determine whether his job duties that he actually performed fell within an exempt status. I believe that I've covered everything I want to cover. If there's any questions, your honors, I'd be more than happy to take them. Thank you. Mr. Secord, we'll hear your rebuttal. Yes. Mr. Riley said something that was very important. It's that nobody knew what a plaintiff did every day. I don't necessarily agree that nobody knew, but he does make a good point. The point is that Mr. Elgarov was a manager. He had discretion to do what needed to be done. He didn't have the oversight, so to the extent that nobody knew what he was doing on a day-to-day basis, that's because he was the manager. He didn't have that oversight, and that is one of the key points of the executive exemption. As far as the credibility, and I know it's an uphill battle trying to have this court reverse a credibility finding, but Mr. Plaintiff did say one thing that is just so ridiculous that it needs to be highlighted. He said that food presentation at this restaurant was not important. Now, I understand that a lot of people in the legal profession have not worked in the restaurant industry, but we've all eaten at a restaurant. This restaurant serves steak, it serves salmon, it serves pasta. There is no restaurant, even the McDonald's that he keeps citing, where food presentation is not important. It is a very important factor, and it is one of the things that he has cited for on his evaluation. It's one of the things that's in his job description. The fact that he is saying that they didn't care about food presentation, I mean, that is a little bit absurd. As far as his performance of non-exempt tasks, it's very clear that the fact that he performed non-exempt tasks, cooking, helping out, does not make him non-exempt. If he has the discretion, which he did, he's the one that chose when to perform those tasks. He's the one that chose who needed help. He's the one that chose where to jump in, and he's the one that set his own hours. He had the discretion to do what was needed in order to ensure the effective operation of his department. Thank you both. We will reserve decision.